Court of Appeals, Clause 6, 156, in Re Grand Jury Subpoenas. May it please the Court, Henry Whittaker on behalf of the United States Court of Appeals. The executive branch has a lot of Senate-confirmed officials who are doing a lot of important jobs, and it's important that those jobs keep getting done, even when there are vacancies in those positions, recognizing that Congress has provided a number of overlapping mechanisms for the executive branch to provide for the temporary performance of those functions. In this case, the executive branch used two of those methods to fully authorize John Sarcone to issue grand jury subpoenas and to supervise criminal investigations in the Northern District of New York. First, Mr. Sarcone, by operation of the FVRA, became the acting U.S. attorney by virtue of his appointment as first assistant. And second, even apart from that, he had delegated authority direct from the — of the attorney general's own litigation authority to perform the functions and duties of the office of U.S. attorney. Turning first to the FVRA incumbency issue, our rule is really quite a common-sense one. If a PAS office is vacant, the — Counsel, I'm going to cut into here because I want to cut to the chase. First, I agree with you that it would be very desirable for the president to be able to appoint people to this. Second, it's also clear that Congress, for its own reason, has put in any number of restrictions on this. And these restrictions have to do with if there is a vacancy, a one, a two, a three have to be qualified. And with respect to a delegation, there is an exclusivity provision. My question is rather this. How can one put together the timing restrictions that are clearly there? If your position were to win, then the timing restrictions 110, 220, 210 are meaningless because you can keep naming the same person beyond those timings. On the other hand, there is this question of specific delegation. And there, I don't quite understand why Mr. Sercone couldn't be appointed to do this particular subpoena, this particular investigation. And so my question is, suppose we disagree with you that he could do it as he did it. What about the court's decision to bar him and bar that? Isn't that necessarily wrong? So understand where I'm going. I'm saying you don't have a general power because that would be inconsistent with the restrictions that Congress has put in. But maybe there might be a specific power which has not been exercised but might be exercised in the future. There's a lot in there, Your Honor, and I'll try to take them one at a time. Just starting maybe with the last point. I mean, to the extent that Your Honor thinks that the Attorney General could delegate to Mr. Sercone the specific authority to conduct these prosecutions, that is the end of this case. Because the delegations that she did here authorized him to do that. There is nothing in those delegations that purports to delegate to Mr. Sercone any authority that she is not lawfully permitted to delegate to him. And so if that's what Your Honor thinks, that has been done here. And that is true particularly by virtue of – The delegation here was general, was not specific. And I don't want to speak for Judge Calabresi. He speaks very well for himself. I understood the question to be there might be a way if, for example, the Attorney General appoints someone to conduct a specific investigation in a specific location about a particular topic or subject matter, not as here, once the interim appointment ends, appointing someone as a first assistant for the purpose of making them the acting U.S. Attorney. Your Honor, the Attorney General is fully empowered to employ general delegations, no less than specific ones. Just take the Deputy Attorney General as one example. The Deputy Attorney General has a standing delegation of all of the U.S. – excuse me – all of the Attorney General's delegable authority. And in that capacity can exercise the power of all 93 U.S. attorneys. And that – and there is absolutely no problem with a general delegation. My concern with your theory is if taken to its logical conclusion, the President of the United States, whoever the President is – this is not a party issue, political party issue – whoever the President is, that individual can bypass Senate approval of any U.S. attorney by just continuously appointing a first assistant for the purpose of making them acting U.S. attorney. When would it end? So that's my concern, is basically end running a system that our founding fathers put in place for a checks and balance system. So if we take your theory that a first assistant – someone can be appointed as a first assistant for the purpose of becoming acting U.S. attorney after the time period for which that person was acting U.S. attorney or interim U.S. attorney has ended, then you could consistently do that and never have approval. And again, this is regardless of who's in power or what political party. That doesn't matter. It's really the system of appointment and approval of U.S. attorneys. How – you know, wouldn't it end run? No, it's not an end run in the slightest. And let me just try to explain why. Then there's a couple things baked in there. First of all, it's true that the limit – the delegation component of this does not have a specific limit. But a delegee exercising the functions of a U.S. attorney is distinct from an acting U.S. attorney. An acting U.S. attorney is someone who can perform all of the non-exclusive and exclusive functions of that. And that is not significant in some cases, but if Congress – But you are arguing – are you arguing that the President could have delegated to Mr. Sarkozy all the authority of an acting U.S. attorney? Not the President. Oh, that's your argument. And my problem, and perhaps Judge Kahn's problem, is it may be wrong that he acted as U.S. attorney, even though he could have been given the power to do something narrower and could still perhaps in the future. There is a – it is true that the delegation of the Attorney General could encompass all of the functions. That is a function, though, of the way that Congress has – Congress and the Executive Branch has defined the functions and duties of the office of U.S. attorney. 3347, the provision that the other side invokes here, only forbids the performance of all the functions of an office in an acting capacity. And what that means is all of the non-exclusive and exclusive functions. And if tomorrow Congress or the Executive Branch by regulation added an exclusive function to the office of U.S. attorney, a mere delegee could perform that function, but – I'm sorry, an acting U.S. attorney could perform that function, but a mere delegee could not. And that illustrates – What is an example of that kind of function? I'm trying to understand more concretely what's the daylight. Yeah, yeah. So a good example is what Judge Schofield said here about the – a delegee's ability to seek tax information under 6103. And what Judge Schofield held in a separate order that's not directly at issue in this case is that Mr. Sarkoen could not be delegated the authority under 6103 to seek tax information. And that's because he's not – he was not seeking that in his – well, she thought that the acting U.S. attorney thing was unlawful, but she separately said that his authority as delegee would not encompass that. And that illustrates – I didn't have enough – sorry. I have another question. Let's assume that we disagree with you and that the district court correctly said there wasn't this general authority. The district court went on in its discretion to bar Mr. Sarkoen from behaving further. What is the standard and what are the cases where someone has exercised more than the authority that was given that allows a district court to bar that person from behaving thereafter? Well, we're not – we're not arguing in this case that if Mr. Sarkoen did not have any legal authority to exercise the functions of U.S. attorney that the district court lacked authority to recuse him. We've not advanced that argument here. But we certainly do – But I'm talking about the future. The district court said he couldn't act further. And I want to know what the law is on that issue. Well, it's not something that's been briefed here, certainly. The court has general equitable authority to enter prospective relief as a result of statutory violations, Your Honor. I confess I haven't focused on that issue. I thought the – when my reading of the cases, there were cases where the court disqualified, sort of said, you know, this individual was not acting as U.S. attorney, but allowed the indictments, for example, to stand. And there were cases where the individual was not only not found to be acting, but disqualified, such as here. In other cases, the indictments were allowed to stand, and the person was just – you know, the case was allowed to go on. But I thought the distinction in all of those cases that I saw was whether the person who was acting and subsequently disqualified from that position had personal involvement in the underlying matter. So in those indictments that were allowed to carry on, the court found there was no personal involvement. In this very case, the district court, in a footnote on page 7 of its opinion, footnote 1, noted the distinction between the Asayali – I'm not – maybe not pronouncing that correctly. Asayali, Asayali. The court disqualified Asayali from performing the functions and duties of acting U.S. attorney but permitted continued service as first assistant and declined to dismiss the indictments signed by assistant U.S. attorneys where Asayali had no personal involvement in the prosecutions. So I understood the distinction between when the court grants that additional relief, saying you can't work on this in the future versus the cases can go on, whether that individual had personal involvement or not in the underlying case. Well, that's the standard that some courts have applied when it comes to whether such an individual, the indictment should be dismissed. I would just note that in the Asayali case and in the Ryan Ellison case in New Mexico, the court did exactly what we're asking the court to do here on the delegation issue where it said that even though the courts thought that the acting designation was invalid, it nonetheless denied motions to disqualify Mr. Ellison. Except here, here, Mr. Sarkoen was the only one who signed the subpoenas. Having been a former prosecutor, I must say I was a little surprised to see the acting U.S. attorney signing subpoenas as, you know, as the attorney handling the case. It was a little unusual. Does that make a difference here that Mr. Sarkoen was the only one? There wasn't another assistant who signed the subpoena. They were signed by Mr. Sarkoen. Your Honor, the disqualification order doesn't have anything to do with the subpoenas. The disqualification order has to do with what happens to the investigation going forward. So personal involvement, I do not think, is at all relevant to whether the court should enter the... But that's what all the cases that I have read where indictments were allowed to continue and continued participation was allowed. It was whether the individual who had no authority was actually involved in the investigations or the decisions to sign indictments and the sort. Your Honor, there's two different issues. First is whether the indictment should be dismissed. And in Pike, that's a retrospective... Well, this isn't an indictment case, right? This is just subpoenas. It's not. And by the way, the subpoenas are gone. I mean, really, the main thing that's before the Court now is the prospective recusal order. Because the grand jury has expired.   You know, we think that that... Because the grand jury has expired and the subpoenas are no longer active. That doesn't mean we don't have jurisdiction because of a capacity renewal. Fine. But the issue isn't whether the subpoenas are now valid because they're gone. The question is entirely prospective. Exactly, Judge Calabresi. And I don't think anything in the denial of the assailant disqualification order or the Ellison disqualification order had to do with the fact that other AUSAs were involved in this case. Other AUSAs would be remain available to assist Mr. Sarcone with the investigation on a going-forward basis. So that would actually be true here, certainly. But I did want to go back to the distinction between a delegee and an acting U.S. attorney because there is an important distinction there. And I know I'm well into my time, but I'm happy to keep going. I mean, a delegee faces two important restrictions on his ability to perform the functions and duties of those offices that an acting U.S. attorney does not. Number one, the delegee is limited by the delegator, in this case the Attorney General's, ability lawfully to delegate functions. And there are restrictions on the Attorney General's ability to delegate functions to various officials in DOJ. And we cite some of those in our brief. And number two, an acting U.S. attorney can perform exclusive any acting officials more generally can perform exclusive functions associated with the office. Now, it's true that we think that there are no exclusive functions when it comes to the office of U.S. attorney, but the FDRA is a generally applicable statute that needs to be applied to all the offices it applies to across the executive branch. And certainly that distinction can broadly have significance. So it's not true. Does the distinction apply when the appointment of Mr. Sarcone, as I understood it, but correct me if I'm wrong, was you're now being appointed as first assistant for the exclusive purpose of serving as acting U.S. attorney. It wasn't that he was already in that position, the U.S. attorney resigns, leaves office for some reason, and the first assistant steps in. He was appointed for the purpose of acting as U.S. attorney, as acting U.S. attorney. So isn't that what the district court focused on? It wasn't as if he was already in place, and of course he's going to step in and have all the powers that a first assistant would naturally have or a first assistant acting as U.S. attorney. I guess that's what I'm trying to help me understand how, again, we can rely on a specific delegation when that didn't happen here. This was specifically for the purpose of becoming the acting U.S. attorney to be appointed as a first assistant. Your Honor, that's how the Department of Justice has administered this statute, at least since 2001, by appointing first assistants to become the acting PAS officials. And we cite 31 examples in our reply brief where the executive branch has done just that. And with all respect to the district court judge, there is no incumbency requirement when it comes to what first assistant is eligible to assume the functions and duties of those offices. In the relevant statute, 3345A, it speaks of the first assistant to the office. So that gets back to my question, which is then the interim appointment by the attorney general, which is 120 days, the temporary transfer by the president, which allows the acting U.S. attorney to serve for 210 days, and the district court appointment, which is a 120-day period. Those three other mechanisms for appointment of U.S. attorney or acting U.S. attorney with timelines become, if you will, redundant or obsolete because then a president, any president, can just always appoint a first assistant. And at the end of the 210 days under 3345A1, the attorney general can appoint, reappoint the person as first assistant and keep doing that every 210 days. So that implicates a separate issue that's not before the court, which is whether the departure of an interim U.S. attorney creates a new vacancy for —  Isn't that the essence of what we're dealing with here, is whether the mechanism —  Because Mr. Sarkone was acting U.S. attorney. When that timeframe ended under one of the other mechanisms, he then was made first assistant. So — I guess if I could also — Yeah. I understand your point, counsel, that it's not specifically raised here, but I guess it does go to, I think, the concerns that the panel has raised about how big is the loophole here in terms of the time. Are we talking about 210 days here, or are we talking about a renewable 210 days after another? Well, that would depend on whether, again, the departure of an interim U.S. attorney creates a vacancy. I mean, they would have the same problem under their theory because under their theory, as long as you have any — if it really were the case that the departure of an interim created a new vacancy — But given your argument about what happens before, you would have to argue that this can continually be done. I mean, the argument that you are making is the same as to each one, and that's what's a little troubling. If the Court thought that you could not appoint successive attorneys under — U.S. attorneys under Section 546, and that — and I assume this is the other side's position — that the departure of an interim U.S. attorney does not create a new vacancy for purposes of the FVRA, the chaining problem is not present at all because the vacancy would start — the time would start running on the departure of a PAS U.S. attorney. In this case, that was — I think it was February 17th, and the time would run on sometime in mid-December. And so that would be true under our view. So there would be bound limits. And again, there are issues — there are issues about the interpretation of 546 that are not before the Court. But analytically, that doesn't — But is it not before the Court? Let me ask you just this question. I did a timeline, and it's my understanding Mr. Sarcone's 210th date ended on February 12th, 2026. Is he still the acting U.S. attorney as the first assistant in the district? We have not held him out as the acting, no. And — but, Your Honor, let me just — and I think this, on the timeline issue — But technically, his term as acting U.S. attorney would have ended on February 12th. So how are we not there? Because — Well, it would depend — I mean, he's not — are you saying he's not listed as the acting U.S. attorney in the government's website, the Department of Justice? He is not. But if you counted — if you counted his acting service from the departure of PAS U.S. attorney, then his acting service would have ended in December 14th. And again, there's this separate issue about what — No, no, assuming you were correct, that one mechanism could follow the other. But even then, the time is now run. So I'm trying to figure that out. It has — well, we do think it has run. I mean, there was the appointment of Mr. Kinsella in — on February 11th, actually, who was — Mr. Kinsella was appointed to the office, and he was fired. We have not contended and are not pressing the argument that Mr. Kinsella's departure creates a new vacancy for FBI purposes. And I am not here to tell you today, to press the view, that we have not made this argument that the departure of an interim U.S. attorney creates a new vacancy. And if that's true, then the chaining concern is certainly not a concern the Court should have with our position about first assistants. And I think the text structure of this — and I'm happy to go through — I know I'm well over my time, but the text structure in the statute strongly supports the idea that there is no incumbency requirement for who a first assistant must be in A1. I mentioned the first assistant to the office language. That is depersonal. That is not personal to any particular officer. And so it follows that whoever is appointed a first assistant automatically assumes those functions and duties. And that's especially true if you compare the current language of the FVRA with its predecessor statute, which did contain —  But your friend emphasizes the — the in front of the FAUSA, not the office. You're talking about the language, the office, that the office has. Yes. But the other side talks about the in front of FAUSA. Well, but I think the just reflects that there is one first assistant at a time. It doesn't reflect that the first assistant has to be appointed at any particular time. And even articles have an excess, and it's one, so the. Well, I mean, there is one. Whoever is the first — because the statute is focused on the present tense. So whoever is the first assistant at present, whether that person is the incumbent or appointed later, is the first assistant, performs the functions and duties. Or appointed later. You said at whoever is at the time, or appointed later. No, no. When I said at the time, I mean at the present time. At present time. No, no, no. In response to your question, you just said whoever is the first assistant becomes the acting U.S. attorney for whoever is appointed later. Well, whoever is the first — the statute focuses on the state of affairs at present. I mean, and we see that by — A-1 talks about performing the functions and duties of the office. You do not perform the functions and duties of the office only at the precise triggering moment in time when the vacancy arises. You perform those functions and duties throughout the duration of the vacancy. So, too, with A-2 and A-3, which talk about presidential designations. The President can designate officials not just at the precise triggering moment of the vacancy, but also throughout the duration of the vacancy. A vacancy is a continuing state. And that's why whoever is the first assistant at present automatically becomes the acting, whether they were the incumbent or appointed later on. And I'm mindful of the Court's time, and I'm happy to address other questions or keep going. But — You've reserved some time for rebuttal. So we'll hear from you again. Okay. Thank you. Good morning, and may it please the Court. I'm Don Verrilli for the Office of the Attorney General for the State of New York. The Senate's advice and consent power is one of the most significant structural safeguards in our constitutional scheme. As Hamilton explained in Federalist 76, the Senate exercises a vital checking function that limits a President's ability to place executive power in the hands of unfit and obsequious characters. Congress enacted the Vacancies Reform Act to ensure that Presidents and the Executive respect the Senate's constitutional role. Congress did authorize the Executive to appoint acting officials to positions that require Senate confirmation, but it imposed a definite time limit and it imposed significant eligibility criteria, all of which require a 1, a 2, a 3, an incumbent office holder. And Congress went further than that. It did something unusual here. It included in this provision, Section 3347, which is an express anti-circumvention provision. It says that agency and department heads may not use their general delegation authority to evade the limits that 3345 and 3346 of the Act impose. Now, the way the discussion unfolded with my friend on the other side was delegation first and then the A1 issue second. I'm happy to go in that order. I'm happy to flip the order. I'm happy to take this in whichever direction is most helpful. Before you start at all, can I just confirm that you're not arguing this case is moved? No, we are not arguing this case is moved. Yes, Your Honor. Maybe I ought to turn to delegation since that's where the discussion started. I do think the text of 3347 is extremely significant. You didn't hear my friend on the other side talk about the words of this provision at all. It says Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office that requires Senate confirmation. And then Subsection B says any statutory provision providing general authority to the head of an executive agency to delegate duties statutorily vested in that agency head to or reassign duties among officers or employees of such executive agency is not a statutory provision to which Subsection A1 applies. Their whole argument with respect to delegation is that the general delegation authority that the AG has is a sufficient statutory authority to allow the AG to delegate Do you concede that a specific delegation could have been given? That is, that Mr. Sarkozy could have been delegated specifically to investigate the New York Attorney General and to seek a subpoena. Not within broader powers, but just delegated to do that specific thing. I'm going to answer that question with as much precision as I can, Your Honor. We believe that a narrower delegation that did not encompass all functions and duties of the Office of the United States Attorney would not violate Sections 3345 or 3347. So any difference in scope is enough? Well, no. I think that the key thing here, I do want to add another qualification if I could and then I'll come directly to Your Honor's question. I do want to remind the Court, we have numerous other constitutional objections to the vesting of this authority in the way in which it's been carried out. We're just talking about the question of whether this has to be reaffirmed. That is not. I just want to make sure that the Court understands that we're just talking about that narrow issue. What I think is important here, and I think it's consequential, is that whatever route one takes, whether one takes the 3345A1 route that he was acting, whether one takes the special attorney route under 515, or whether one takes that he was appointed first assistant route, with respect to each of those, he was expressly, unequivocally delegated all of the functions and duties of the United States Attorney. So every one of those delegations is invalid as it was done. There may be a different one in the future that could be done that is narrower, but the ones that were done here are unlawful. Yes, but the district court also barred Mr. Sircone, and that's the question that I'm wondering about. Assume I agree with you that the delegation was improper. Though it wasn't his delegation, he was the delegee. Is there any ground for barring Mr. Sircone from being a specific delegee to do something? And then all the other issues can be decided. But I'm wondering about whether the district court, in its discretion, barred him, whether that discretion should be at least reconsidered if we believe that a specific delegation to do something is not necessarily barred. Here's how I would suggest that the court approach that, Judge Calabresi. I think it was perfectly appropriate for the district court to disqualify Mr. Sircone from conducting this investigation on the basis of any one of the three purported delegations of authority that he received because they are all flat violations of the law. Now, if in the future the Attorney General seeks to delegate more narrowly to Mr. Sircone just the authority to conduct this investigation, we can litigate in the district court whether there is any violation of the, whether there's any equitable basis to object to that on the basis of the prior conduct of Mr. Sircone. Well, except that if your opponent is following the court's order, the court said he's barred, he's disqualified from pursuing, you know, having involvement in this investigation. He, your opponent said he's no longer the acting U.S. attorney. He's still in the office as the first assistant. The 210 days have ended. Do you know if he's the acting U.S. attorney? Your Honor, what we know is that he is purportedly exercising all of the functions and duties of the U.S. attorney as first assistant because that's what the delegating document says and that's what he's claiming. We also know that he is claiming to exercise all the functions and duties of a U.S. attorney as special attorney because that is what the special attorney delegation document says. Those are all flatly unlawful. Now, we are, with respect to the ---- So, okay. So you take a different, you know, your opponent said, well, he's not holding himself out as the acting U.S. attorney, which is why I asked, is he still listed as the acting U.S. attorney on the Department of Justice website? I don't know. I'm asking counsel how he's portraying himself currently. But getting back to this question of the disqualification, as I understood it, in the cases where the courts have said, look, you are not validly in your role, but the indictments can carry on, the court made a ---- those courts made a distinction saying because the acting U.S. attorney didn't personally have involvement in the underlying investigations in the indictments, there's no need for disqualification, there's no need to dismiss the indictments. How did those cases apply to this case and the issue of disqualification? Let me try to walk through this step by step. I realize this is complicated. There's a lot of arcane statutes here. But I want to be careful to make sure we're conveying exactly our position. We think that Your Honor is quite right. Mr. Sarcone was deeply involved in the conduct of this investigation. In fact, he's the only lawyer that we know of that was involved in this investigation. So he's deeply implicated in it. Now, so here's the way I think this plays out. His current assertion of authority, whether it was as acting U.S. attorney, currently as special attorney, currently as first assistant, is flatly unlawful because it was a delegation of all the functions and duties of the office, which violates the unambiguous express terms of 3347, flat out. So he cannot do anything. And he's disqualified insofar as he is relying on the delegations that have thus far occurred. Can you explain why it violates 3347? Like what specifically about the general delegation violates 3347? It's the delegation of, in the first language, the language of the first sentence of the provision is that sections 3345 and 3346 are the exclusive, exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office. But it's not an acting official here. I guess that's what I'm getting at, Your Honor, is that they've acknowledged, as they have to because the documents say it, that he has been delegated all of the functions and duties of the office of United States attorney. The only thing he has not been delegated is the title acting United States attorney. The only thing. In their views, what this statute says is that you are, that the executive, head of an executive department is forbidden from giving a person the title. The title, but there's also, I thought your friend was saying there's some residual non-delegable. No, that's the key, several key things. They absolutely have taken the position, and I think I heard Mr. Whitaker say it unambiguously from this lectern, that there are no non-delegable powers for a United States attorney. That's their position. Now, they are trying to have it both ways a little bit because they're pointing to Judge Schofield having said there's one. But they've purported to delegate all of the functions and duties of the office 100%. But your point has to be that if this delegation could be made generally once again, the time limits would have no meaning. The time limits would have no meaning. And that's exactly right. The time limits would have no meaning. It wouldn't just be 210 days rolling over and over again. It is permanent. This person has this authority for as long as the AG wants the person to have this authority. So it violates the 347 because if it's exactly the same duties and responsibilities of the acting, that would be, I guess, an end run of a provision.  If there's any daylight between the duties, if you say, you know, all the duties of acting minus these two cases, this Trump and NRA case, then it's okay? No, I don't think so.  Because I think that's just a, you know, I think the court ought to apply a norm of substantial justice here when something is self-evidently an end run around the requirement that the executive abide by the limits of the FVRA. But you don't have to address that here, Your Honor, because if I could just make two points. One is you don't have to address that here. They purported to delegate all of the functions, and they say there are no non-delegable functions. That's what they've done. That's what's before the court. That's all the court needs to rule on. I want to know, if we were to agree with you generally, what we then say to the district court in the face of a possibility that with this subpoena no longer being there, that Mr. Sarkoen has been nominated, delegated, I'm sorry, by the president to bring a subpoena and to do this investigation. At that point, is it a question for the district court whether the previous involvement is such that he must be recused, even though the delegation is valid, or is that something that has been settled? I think that has not been settled, Your Honor, and I think that would be if the attorney general were to invoke 515, 28 U.S.C. 515, purport to do that kind of narrow delegation, I think we'd want to reserve the ability to make an argument of the kind that Your Honor has described. But those issues haven't been resolved yet. What we're talking about here is a delegation that's flatly unlawful. And if I could go back, Your Honor, to the questions you were asking me before for a moment, I do want to point out something, you know, about their position. Their view, their reading of 3347 is that the only time in which it has any bite is when an office is an office that has some non-delegable duties. Okay? Let me just say, they've identified in their briefs, I don't know, a half a dozen such offices. There are more than 1,200 PAS offices. So what they're saying, essentially, is that all of the powers and duties of any office that requires Senate confirmation can be freely delegated so long as you don't also give them the title, except in this tiny, little, tiny subset of offices. That cannot possibly be what Congress intended when it enacted this law. It would make the statute a dead letter, not only with respect to the time limits, but with respect to who qualifies, who's eligible. Because they're saying, well, we can do this, we can give this to anybody. Right? We can give this to anybody, not people who are qualifying under A1, A2, or A3, but anybody. Can I switch over to 3351? Yes. I was just about to do that. Thank you. If Mr. Hanlon had stayed on as FAUSA after the 546 appointment of Sarcone, would he, after that had expired, after the district court didn't exercise its 546 option, let's call it, would Mr. Hanlon have returned to acting? I think so, yes. I think so, yes. He would. Why is that, though? Because I thought the whole premise of A1, your theory, is that it depends on the time of the vacancy arising. Well, because there's a separate statutory provision that allows for the 120-day interim appointment, but A1 operates as a backdrop, so he would have stayed as first assistant, but he would have been first assistant and acting during the period in which there was no interim U.S. attorney appointed, but first assistant and not acting during the period in which there was an interim U.S. attorney appointed. So I don't – The crux of your theory is that it has to be – it's the incumbent, the person, not the time the vacancy arises. It's both. It's both. And I think this is – Well, if it's both, then Hanlon wouldn't be back to acting after the 546. Well, I think – well, of course, that didn't happen here. But I do – I think this does point up, you know, the crux of the dispute between us, and I do think – I do want to focus on exactly what they are saying about this because I think it is quite significant. Their view is that when Congress in 1998 put the words to the office into the statute, that what they meant – what Congress meant to do was to effectuate a wholesale revision of the way in which the Vacancies Act operated by conferring massive new discretion on the executive branch that wasn't there before. Now, if one looks at page 17 of their reply brief, they acknowledge that prior to the Vacancies Reform Act in 1998, the law provided under the Vacancies Act that only the incumbent first assistant could take over and become acting. Okay? So what they are saying is that – I'm sorry to cut you off here, but this seems to be a problem for you. If it's the incumbent, the person, and it's not the time the vacancy arises, then your argument about the tense of the words dies and resigns goes away. No, I think it's – I think it's more than – I'm sorry if I said that, Your Honor. I didn't mean to. I must have misspoke. It's a series of things. It is, one, that this is a – as a textual matter, that this is a default provision. It happens automatically at the moment of resignation, death, or otherwise. And I thought you were saying – correct me if I'm wrong – is that that is a one-time operation at the time the vacancy arises for the incumbent. But now you're saying that it can – if it were handling, he could come back. Well, I think – you know, I think that's probably how it would operate because he would be – he would just – he would default back to what it was. But I think the key thing – But it's not hooked to the time of the vacancy. It is hooked to – I'm sorry, Your Honor, respectfully. It is hooked to the time of the vacancy because he became acting at that moment. But I do think it's important to understand what the implications of their view is here. As I said, you would take a provision – that would have required previously only the incumbent to ascend to the role of acting. But in your responses to Judge Park's questions are puzzling me as well. I think I have the same concern he has. Are you saying that after Daniel Hanlon was demoted, if what happened didn't happen, that Mr. Hanlon could step back into the position? No. No.  And then be appointed for 210 days as the acting? No. No. Default? No, I'm not – The default to acting? I'm not saying that. Okay. What I'm saying is that only Mr. – under the proper operation of the statute, only Mr. Hanlon could have served as acting under A-1. Prior to his demotion, not after his demotion. Yes, correct. Once he was demoted, then our view is that A-2 and A-3 are the only means to fill the office. And that, I think, is – it really has to be what Congress had in mind because – And that the change of language brought about by Senator Lieberman's could not have made a broader change in that because that would have destroyed the whole timing, the 120, 210 days, et cetera, as well. So it has to be interpreted more narrowly. That's correct, Your Honor, but it would have destroyed not only the 210 days, but there's – A-2 and A-3 impose very serious limits. Yes, of course. And it would have made them completely irrelevant except in this tiny – again, this tiny subset of cases in which – or my friend on the other side has argued that both the principal and the first assistant require Senate confirmation. My friend says, well, those provisions would have some work to do in that situation. But, again, that 1,200-plus PAS offices – Your argument is it is possible that that change created a certain amount of ambiguity, but that ambiguity cannot possibly be read as the government reads it because it would completely destroy the structure. Yes. The way I would put that, Your Honor, is that even if one thinks that the introduction of those words created some ambiguity – and I would point the Court to the fact that no one in the legislative process said that they thought they were doing anything like what my friend on the other side claims they've done – but if one looks at the structure, the context, the history, the purpose, the practicalities – Speaking of those – I mean, so let's say – take the transition context. So it happens – seems fairly frequently that the attorney and the FISA resign together. In that situation, under your view of 3345A1, there's no – it just has no application. You move on to A2 and A3? Yes. I think that's exactly how the statute – that's what the statute says. It's how the statute works. And respectfully, Your Honor, I think that's a feature and not a bug. The point of this statute was to protect the Senate's role in the appointments process. And this has happened, though, quite a bit, and it's never been raised. Well, it's happened, I think – my friends on the other side have raised 31 instances of it happening since 1998. Twenty-eight years, 31 instances. Now, I would remind the Court that in Southwest General, the United States came in and made an argument, well, there were 112 instances of the kind of appointment that the challenger said was unlawful there, and the Court said – and that was 10 years ago, more than 10 years ago – and the Court in that case – Supreme Court said in that case, well, that 112 examples is – doesn't come anywhere close to establishing the kind of accepted practice that we would think tells us what the statute means. The statute here says – and I do think the consequences matter a huge amount here, Your Honor, in that thinking through what their position is, it's that under A-1, not even the President, but the head of the department can appoint anybody to a Senate-confirmed position on an acting basis. Anybody, except in that tiny subset of cases in which both the principal and the first assistant are – Even if it's that small, that doesn't make it a textual superfluity, the way we think about it. Yeah. I think – well, I think the Supreme Court has said in the cases we cited that when something is even if not 100 percent superfluous, overwhelmingly superfluous, that matters. But we're not just making a textual argument here. We're making a more fundamental argument here, Your Honor. As the Chief Justice said in Southwest General, that this statute was enacted in reaction to Congress' belief of perceived abuses by the executive of the use of appointing acting officials. It was meant to impose very, very substantial constraints on the authority of the executive to use the acting – the appointment power for acting. And what my friends on the other side are saying is that the main constraint of the law before the amendment in 1998, which was that only incumbent first assistants could ascend to the acting role, was eliminated by Congress so that anybody could be put into that acting role under A-1. It's just inconceivable that that's what Congress thought it was doing at the time. And I think it's hugely important that there is not one scrap of historical evidence that anyone said that that's what they were doing, anyone thought that that's what they were doing, anyone gave any rationale for doing that. There's nothing, nothing, nothing there at all. It's just inconceivable that that's what Congress sought to accomplish. And therefore, when one looks at the statements, to the extent the Court's willing to look at the legislative history and one looks at the statements, they said they were not changing the old law, which provided with respect to the first assistants, they were not changing the old law. The old law required it to be the incumbent. That's what they said over and over again. Now, my friend says, well, the Senate report was drafted before the words to the office were put in. That's true. But if one looks at page 12 of the Senate report, they're actually already explaining on page 12 the thinking behind putting those words in, which is that you need to put it in because once the person, once the incumbent dies or resigns or is otherwise incapacitated, the first assistant is not the first assistant to that person anymore. It's the first assistant to the office. But then it goes on to say we're not seeking to make any change to prior law. Now, I think the other thing that's really important is that you read that next paragraph on page 12 of the Senate report. It says, we understand that in the vast majority of instances, it will be career officials who fill these roles temporarily under this statute. This was not a statute, which as my friends on the other side suggest it was, was designed to provide additional discretion to the executive to put in what my friends describe as their politically preferred office holders. It was the opposite of that. It was designed to insist that career officials do the work temporarily so the government can function, but that creates an enormous incentive for the executive to get confirmable nominees up to the Senate fast to be confirmed. That's the operation of the statute. And if I could just make one more point, I know I've gone on for a very long time here. It's been 469 days since the inauguration of the current president. There is no nominee for the Office of the United States Attorney for the Northern District of New York. That is a striking, striking thing. There's no nominee to this day. And I think that tells you a very great deal. I think what it tells you is that it is obvious that everything that's happened here with respect to Mr. Sarcone is being done for the express purpose of avoiding the Senate's role, the role that Hamilton described that the Senate should play in situations like this in order to ensure that people are fit for the office. They want this investigation of our office and of our attorney general to go forward without any scrutiny from the Senate. That is what is happening. Well, whoa, whoa, because that investigation can go forward under a specific delegation, but not prove that way. That, as you said, is an issue that it may or may not be, but is a separate issue from whether the office can do it. So don't conflate the two. Well, I appreciate that point, Your Honor. I'm not conflating the two. I apologize if it sounded like I was. What I'm making, the point I'm trying to make is that it seems like a very deliberate effort to avoid any scrutiny from the Senate with respect to this issue. Thank you. Thank you, Your Honor. I'll just start with a couple of points on the FBI incumbency issue. Their view doesn't prevent chaining at all either, because if it's true that the departure of an interim U.S. attorney creates a new vacancy, if there were a — we could just choose a FAUSA, I guess, before that vacancy arose and keep the times running just the same. So that's not a reason to prefer their — chaining is not a reason to prefer their interpretation over ours. It would equally be a problem under their interpretation. What is particularly odd about their interpretation is that it basically leaves A-1 with almost no operation during presidential transitions, which is kind of the point, you know, most critical time when you need this authority. And it would be pretty odd, I think, because I think Mr. Varela conceded that under their view, if you have first assistants who resign before presidential transitions, A-1 is just not going to be available at the start of transitions because those positions are going to be vacant and later appointed first assistants are not going to be able to assume those offices. And there is a good reason why Congress added this. You know, Mr. Varela could not think of or could not imagine why Congress would want to broaden this authority in enacting the FVRA in 1998. But that's because Congress was, in other respects, constricting the executive's authority to do these vacancies and creating time limits and this very reticulated structure. And that was the concern that Senator Lieberman stated on the floor. And in response, Senator Thompson said on the floor of the Senate, and there is evidence in the legislative record, he says that that the point of that change was to, quote, depersonalize the first assistant. And that is on all fours with our interpretation of that provision. Just real quick on delegation. The critical language in 3347 is, quote, an acting official who performs the functions and duties of an office. It's not all of the functions if they are nonexclusive functions. And the critical feature of an acting official, as 3348 makes clear, is not that they are performing not just the nonexclusive functions, but also the exclusive functions. And if this is a delegation of the exclusive functions of the office, even if those happen to overlap completely with those functions, that is perfectly consistent with 3347 of the FVRA as the Federal Circuit squarely held in Arthrex. And the Court should not deepen the circuit split with Arthrex. The Federal Circuit got that exactly right, and the Court should hold that and say that Mr. Sarcone need not be recused just because the delegation and broad base. And just one point I want to stress. It's not just a delegation of the functions of U.S. attorneys. It's the Attorney General's own authority. She has the litigation authority herself, and she delegated to that to Mr. Sarcone under Section 510. And the fact that the delegation is broad does not matter at all. That is very commonplace among Department of Justice officials. Excuse me, Judge Calabresi. Oh. And if there are no further questions, we would ask the Court to reverse. Thank you, counsel. Thank you both. We'll take the case under advisory.